UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD RICHARDSON,<br><br>              Petitioner,<br><br>       vs.<br><br>G.J. GUIRBINO,<br><br>              Respondent. | No. 1:03-cv-05348-JKS<br><br>MEMORANDUM DECISION |

Petitioner Richard Richardson, appearing *pro se*, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently incarcerated by the California Department of Corrections and Rehabilitation at Centinela State Prison, Imperial, California.

I.  BACKGROUND

Petitioner's first trial in the California Superior Court, Stanislaus County, ended in a mistrial.  Upon retrial Petitioner was convicted after jury trial of two counts of attempted robbery of an inhabited dwelling (CAL. PEN. CODE §§ 211, 212.5, 664), three counts of robbery of an inhabited dwelling (CAL. PEN. CODE §§ 211, 212.5), and single counts of burglary (CAL. PEN. CODE § 459), conspiracy to commit robbery of an inhabited dwelling (Cal. Pen. Code §§ 82, 211, 212.5), participation in a street gang (CAL. PEN. CODE § 186.22(a)), and being a felon in possession of a firearm (CAL. PEN. CODE § 12021).  The jury also found that Richardson personally used a firearm (CAL. PEN. CODE § 12022.5), committed the offenses to benefit a criminal street gang (CAL. PEN. CODE § 186.22(b)(1)), had one prior serious felony conviction (CAL. PEN. CODE § 667(d)),  and had served one prior prison term (CAL. PEN. CODE § 667.5(b)).  Petitioner was sentenced to an aggregate term of 49 years.

Petitioner timely appealed to the California Court of Appeals, which, in an unpublished decision, affirmed the convictions but remanded to correct the sentence.  Petitioner sought timely review by the California Supreme Court, which summarily denied the petition without opinion or

citation to authority on January 23, 2002.  On April 19, 2002, upon remand, the California Superior Court modified Petitioner's sentence to an aggregate of 47 years.

Petitioner did not seek post-conviction relief in the California state courts.  Petitioner timely filed his petition in this Court on March 20, 2003, and his amended petition on November 19, 2003.[1/]

## II.  FACTS[2/]

Shameka Gray was living with Sarah Hodge and her three-year-old son. On the evening of December 3, 1997, Sarah's brother Leslie Hodge, Leslie's friend Antoine McElvaine, and Jill Townsend were visiting.  Shameka was in her bedroom; the others were in the front room.

There was a knock on the door. Sarah asked, "Who is it?"  She did not understand the reply and asked again.  The door was kicked open and several men dressed in dark clothing with masks on their faces ran in.  They were armed with guns.  They told the occupants to lie down.  Leslie ran down the hall and Sarah ran after him.  Jill and Antoine remained in the front room, with Jill holding Sarah's son.

Some of the intruders confronted Leslie Hodge in the bathroom.  He was asked to turn over his money.  Leslie gave the men $40, a ring and a necklace.  He was told to strip.  He complied and was then wrapped in a blanket.  One of the intruders spread Leslie's buttocks apart, apparently to check for hidden drugs. Immediately after the robbery Leslie told police officer Benito Chavez that Richardson had ordered the other subjects to take Leslie's clothes off, put a sheet over his head, and do a pocket check.[1]  At trial, Leslie said he could not identify any of the intruders, denied that he previously identified any of the intruders, and testified he could not even identify their race.

---

[1]  A pocket check is a slang term for going through a victim's pockets for money and/or drugs.

---

Sarah was stopped in the door to her bedroom.  One of the robbers instructed another to put some clothes over Sarah's head; he complied. The robbers ransacked the room.  They asked Sarah where she kept her purse; she did not answer.  Sarah asked one of the intruders if her son was okay; he said that he was.  The intruders left.

---

[1/] Respondent concedes that the amended petition relates back to the original petition.

[2/] As recited by the California Court of Appeal.

When questioned by police that evening, Sarah told officers that she recognized Green and Richardson from their voices. She stated that Richardson was the one who told her that her son was okay. Sarah was sure of her identifications. When questioned a few days after the crime, she stated that Richardson told her to get down. She heard Green tell others to strip Leslie. Harrell and Richardson were going through Sarah's drawers and Green stayed with Leslie. At the preliminary hearing, Sarah testified that before her face was covered she recognized Green, Richardson, Harrell, and Damon Morrison.[2] She had known all of them before the robbery occurred. At trial Sarah testified she could not positively identify who was at her house that evening. She said it could have been anybody. She had a reasonable doubt that the defendants were the ones who robbed her. She also testified at trial that no one asked her for property during the robbery.

---

[2] Morrison was not a defendant at trial.

---

Shameka was in her room when she heard screams and footsteps. She sat on her bed and then opened her door. Richardson motioned for Shameka to go back in her room. She shut the door to her room. She heard Green tell Leslie what to do. Shameka hid her purse. Harrell came in and told Shameka to get down. Because she knew Harrell Shameka said to him, "It's Meek."[3] One of the intruders took food stamps from Shameka's jacket.

---

[3] Meek is Shameka's nickname.

---

When interviewed by police the evening of the crime, Shameka identified Harrell, Green, and Richardson as the robbers. When interviewed a few days later, Shameka again identified Harrell and Richardson as two of the robbers, and said she also recognized Green's voice. At the preliminary hearing, Shameka identified the three defendants and their activities. At trial, she testified that she thought she saw Harrell and Richardson, but she wasn't sure now. She could not positively say that Harrell, Green, and Richardson were involved in the robberies.

Jill Townsend turned to the wall with Sarah's son when the intruders came through the door. Someone asked her where her purse was; she said she did not have one. One of the intruders put a jacket over her head. Townsend was not able to identify anyone at trial. She testified that she might have told officers that she recognized Green's voice and recognized Morrison. After the robbery, Townsend received numerous pages on her pager displaying the number 187, which is the Penal Code number for murder. In addition one night she received 45 hang-up calls. She said she was not fearful.

McElvaine remained in the front room during the robbery. He had $2 taken from him. After the robbery McElvaine told officers that he did not know anything. The officers believed he was being uncooperative and evasive.[4]

---

[4] There was testimony that McElvaine was robbed of $1,200 the day before but he did not report this robbery.

---

Immediately after the robbers left the home, the victims all discussed who they believed was involved. Sarah called her father; he arrived and called police. About 15 minutes after the robbery Sarah received a call from Green. She accused him of the robbery, he denied being in her house that evening.

Detective Allen Brocchini (*sic*) is a member of the police force's gang unit. He testified that he is familiar with the Oak Street Posse (OSP), a criminal street gang. The OSP claims the color black, and associates with the number 105 because that is the original address on Oak Street where the gang began. Based on photographs, tattoos, gang rosters, police reports, and observations, it was Detective Brochinni's (*sic*) opinion that Green and Richardson were current members of the OSP when the crimes were committed and Harrell was an associate of the gang. Detective Brochinni (*sic*) testified regarding numerous crimes committed by members of the OSP.

Within a day or two after the robbery Sarah went to her car and found the number 105 written in dust on a window.

### III. GROUNDS RAISED/STANDARD OF REVIEW

Petitioner raises three grounds: (1) ineffective assistance of counsel; (2) insufficiency of the evidence to support conviction; and (3) a double jeopardy claim. Respondent concedes that all three claims have been exhausted.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,*

360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on direct appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

## IV.  DISCUSSION

A.  *Ineffective Assistance of Counsel*.

Petitioner alleges three errors of counsel that either individually or cumulatively rendered assistance ineffective.  First, counsel failed to move for acquittal on Count 5.  Second, counsel failed to request bifurcation of the gang charges and enhancements.  Third, counsel failed to object to the prosecutor's argument implying defense counsel fabricated evidence.  All, except the second, were presented to the California Court of Appeal and rejected as follows.

### Assistance of Counsel (Harrell & Richardson)

### A. Standard of Review

> "To secure reversal of a conviction for ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that, to a reasonable probability, defendant would have obtained a more favorable result absent counsel's shortcomings. [Citation.] If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal. [Citation.]"  (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)

### B. Failure to Move for Acquittal on Count 5

> Harrell claims his counsel was ineffective because he failed to move for acquittal on count 5 at the close of the prosecution's case-in-chief when there was no evidence of a taking or attempted taking from McElvaine.  Because the evidence was insufficient to support the conviction at this time, he contends the

*Richardson v. Guirbino*, No. 1:03-05348-JKS          5

court would have been obligated to grant the motion. Counsel's failure to bring the motion, he argues, therefore deprived him of acquittal on this count. Richardson joins in this argument.

Respondent concedes that the People failed to produce sufficient evidence to prove count 5 during their case-in-chief. Respondent contends that if a motion had been made, the prosecution would have been allowed to reopen its case; thus a motion for acquittal would not have altered the outcome of the case. Furthermore, because the court would have in all likelihood allowed the prosecution to reopen its case, a motion by counsel would have been futile.

"It is well settled that the trial court has broad discretion to order a case reopened and allow the introduction of additional evidence." (*People v. Rodriguez* (1984) 152 Cal.App.3d 289,294.) "The court always has discretion to allow the prosecution to reopen after a section 1118 motion so long as the court is convinced that the failure to present evidence on the issue was a result of 'inadvertence or mistake on the part of the prosecutor and not from an attempt to gain a tactical advantage over [the defendant]." (*People v. Goss* (1992) 7 Cal.App.4th 702,708, brackets in original.)

Appellants have failed to provide any basis for us to conclude the trial court would not have granted a motion by the prosecutor to reopen if a section 1118.1 motion had been made at the close of the prosecution's case-in-chief. They have failed to demonstrate ineffective assistance of counsel.[28]

---

[28] There is clearly a tactical reason for not making such a motion. A motion alerts the prosecution to a possible defect in their case and allows them, in most instances, an opportunity to reopen. If the motion is not made, there is always a possibility that the People will not notice the defect until trial is over and then an acquittal would be required.

---

### C. Failure to Request Bifurcation of the Gang Enhancement and Charges[3/]

Harrell's trial counsel did not move to bifurcate the trial of the gang allegations from the jury's consideration of guilt of the other charges. Harrell asserts his trial counsel was ineffective in failing to do so. He contends there was no strategic reason for not making the motion and he was prejudiced because counsel's failure allowed the admission of his prior convictions for burglary and a mountain of evidence regarding crimes committed by Green and Richardson as well as other OSP members.

---

[3/] The record does not show that Richardson either presented this argument to the California Court of Appeal in his opening brief or joined in Harrell's argument in the reply brief. This issue not having been properly presented to the California Court of Appeal it has not been exhausted and may not be considered by this Court. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

MEMORANDUM DECISION
*Richardson v. Guirbino*, No. 1:03-05348-JKS        6

The thrust of the prosecution's case was that this home invasion robbery was gang related. The perpetrators chose people they knew in order to intimidate them and further establish their dominance as a gang in the area. The gang connection also explained the changing identifications by the witnesses. The evidence was very relevant. "Case law holds that where evidence of gang activity or membership is important to the motive, it can be introduced even if prejudicial." (*People v. Martin* (1994) 23 Cal.App.4th 76, 81.)

Furthermore, as previously discussed, in urging the jury to distance Harrell from the others and treat him differently, his counsel emphasized that Harrell was not, like his codefendants, connected to the bulk of the gang evidence. Harrell has failed to show that a bifurcation motion would have been successful, and in any event Harrell's counsel had a tactical reason for allowing most of the gang evidence to be admitted without seeking bifurcation.

### D. [Omitted]

### E. Failure to Object to the Prosecutor's Closing Argument

Citing two portions of the prosecution's closing arguments to the jury, Harrell claims the prosecutor implied that defense counsel fabricated evidence. The failure of his trial counsel to object and request an admonition, asserts Harrell, constitutes ineffective assistance of counsel. Richardson joins in this argument.

During his initial argument to the jury, the prosecutor explained why Sarah's initial story of seeing Richardson the day before was true and was in conflict with Richardson's alibi that he was sick in bed that day. He then stated, "Mr. Spokes [counsel for Richardson], the defense counsel, is very creative. Maybe he'll have a response for you. But it's not based in fact, I suggest to you that." Harrell cites this as the first instance of prosecutorial misconduct. This statement was directed at counsel for Richardson; Harrell has failed to show how it adversely affected his case. In any event the prosecutor was not alleging that counsel was fabricating evidence; he made a legitimate suggestion that counsel may be able to try and explain certain conflicts in the evidence with a creative argument. This was a legitimate criticism that the defense lacked evidentiary support and was a proper comment on the evidence and the inferences to be drawn therefrom. (*See People v. Fierro* (1991) 1 Cal.4th 173, 212.)

Next Harrell points to a portion of the prosecutor's final argument to the jury. During this portion of argument the prosecutor was rebutting arguments made by defense counsel and pointing out why their arguments should not be accepted. He stated: "*Sometimes defense attorneys will come up with things that aren't quite true* or perhaps open to several interpretations and push one interpretation to get you to focus on something besides their client's guilt. We have had some examples of that in this case." (Italics added.) [29] The prosecutor

went on to give more examples from the arguments of defense counsel where the defense version is in conflict with evidence presented by the People.

---

[29] Harrell quotes only the italicized portion of the above quote in his brief.

> "It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense." (*People v. Bemore* (2000) 22 Cal.4th 809, 846.) But, the prosecutor is given wide latitude in describing the deficiencies in opposing counsel's factual accounts. (*People v. Frye* (1998) 18 Cal.4th 894, 977-978.)
>
> Viewed in the context in which the statement was made, the jury would certainly understand the argument to be nothing more than urging it to not be misled by defense evidence. Even if the comment was improper, it was fairly innocuous and the remark was far too mild to constitute improper misconduct. Harrell has failed to sufficiently prove ineffective assistance of counsel.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

In *People v. Kraft*, 5 P.3d 68, 124 (Cal.2000), cited by the California Court of Appeals, the California Supreme Court adopted *Strickland* as the standard for ineffective assistance of counsel under the California Constitution. The California Court of Appeal unquestionably applied established Federal law, as determined by the Supreme Court of the United States. This Court cannot say that the decision of the California Court of Appeal was contrary to, or involved an unreasonable application of, *Strickland–Hill*, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as required by *Williams–Lockyer*.

Petitioner is not entitled to relief on his first ground.

B.  *Sufficiency of the Evidence*.

Petitioner argues that the evidence was insufficient to convict him of the gang crime, which Petitioner further argues contributed to the jury finding him guilty on the other counts.  In rejecting this argument, the California Court of Appeal held:

### Sufficiency of Evidence of Active Gang Participation

Richardson was charged and convicted of the felony offense of active participation in a criminal street gang. This crime is set forth in section 186.22, subdivision (a). It provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

Richardson now claims the evidence was insufficient to support this conviction.  In particular he asserts the evidence was not sufficient to prove the active participation element because it did not show that he devoted all or a substantial part of his time and efforts to the criminal street gang.  Richardson does not dispute that the evidence clearly showed he was at one time a member of the OSP.   But he contends the evidence demonstrates that at the time of the crime he was gainfully employed and was occupied in other, legitimate activities, which left him too little time to have been able to devote all or a substantial part of his time and efforts to the gang.  Richardson places primary reliance on the case of *People v. Green, supra*, 227 Cal.App.3d 692 to support his position.

Because Richardson does not challenge the element that OSP is a criminal street gang nor challenge that he previously was an OSP member, it is not necessary to discuss this evidence.  Our review of the evidence focuses on the testimony that was offered to prove that Richardson was an active gang member at the time of the instant offenses.[26]

---

[26] Citing People *v. Smith* (1998) 64 Cal.App.4th 1458 respondent argues that Richardson has waived his right to ask for substantial evidence review on appeal by failing to object below.  It has been held that sufficiency of the evidence issues are never waived. (*People v. Neal* (1993) 19 Cal.App.4th 11 14, 1122.)  The *Smith* case determined that "the failure to seek a judgment of acquittal at the close of the prosecution's case in chief pursuant to Penal Code section 1118.1 waives argument on appeal that the evidence was insufficient at that point to support conviction." (64 Cal.App.4th at p. 1461.)  The *Smith* case does not hold that substantial evidence review is precluded in general, it is limited to the availability to challenge the substantiality of the evidence at the close of the prosecution's case when a motion for judgment of acquittal was not raised below.  The discussion in Issue IX below at pages 42-45 illustrates this point. Substantial evidence for count 5 was not presented until after the prosecution's case, but appellant could not challenge this

state of the evidence on appeal absent a motion for judgment of acquittal at the close of the prosecution's case. *Smith* does not stand for the proposition asserted by respondent. Richardson has not waived this issue for purposes of appeal.

---

On appeal "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.)

Detective Brochinni testified that Richardson was an active participant in a criminal street gang. In addition to the abundance of evidence that Richardson was an active gang member prior to his incarceration in 1991, Brochinni testified to Richardson's gang participation after his release from prison in 1995. In January of 1995, Richardson was present in a house where a search warrant was served. Also present were OSP members. In July of 1997, Richardson was with an OSP member when he was contacted by his parole agent. In September of 1997 he showed Brochinni his OSP tattoos and said he was OG (Original Gangster) OSP. He did not say he was a former gangster. After this crime occurred, a search warrant was served at Richardson's residence. Officers found a binder containing OSP materials and a gang-related poster on the wall of Richardson's room. Although the poster was not of recent origin, it was still being displayed in the room. Although the gang material in the binder might not have been of recent origin, other materials in the binder were recent, which indicated that Richardson still used the binder. In addition Richardson's participation in the current criminal offenses was offered to prove his active participation. Also, Officer Roberts testified that when she searched Richardson's bunk in jail on June 19, 1998, she found writing above Richardson's bed which said "Oak Lov."

As previously set forth, in *People v. Green, supra,* 227 Cal.App.3d 692, the appellate court held that active participation in a street gang, as that term is used in the substantive crime contained in section 186.22, subdivision (a), referred to a person who devoted all or a substantial portion of his time and efforts to the gang. After trial in this case the Supreme Court in *People v. Castenada, supra,* 23 Cal.4th 743 overruled *Green* and held that the active participation contained in section 186.22, subdivision (a) requires proof that the defendant's involvement with the gang is more than nominal or passive. Although *Castenada* was filed after the opening brief was filed in this case, it was filed before respondent's brief was filed and before Richardson's reply brief was filed, yet neither party mentions this case. It is dispositive of the issue here.

> "[O]ne 'actively participates' in some enterprise or activity by taking part in it in a manner that is not passive. Thus, giving these words their usual and ordinary meaning, we construe the statutory language 'actively participates in any criminal street gang' [citation] as meaning involvement with a criminal street gang that is more than nominal or passive." (*People v. Castaneda, supra,* 23 Cal.4th at p. 747.)
>
> Richardson had a prior established relationship with OSP that is not disputed. He was in the presence of OSP members on at least three occasions after his release from prison, including the current offenses that were described by Brochinni as gang offenses. He displayed OSP materials on the wall of his room and maintained a binder in his room which contained OSP materials. OSP-related grafitti was found above his bed in jail after his arrest. He displayed his OSP tattoos to police officers claiming to be an OG, but he did not renounce his membership in the gang. This was sufficient proof that Richardson "actively participated" in a criminal street gang. Contrary to his argument on appeal, the prosecution was not required to prove that he devoted all or a substantial portion of his time to OSP activities.

Based on that holding, the California court of appeals further held:

### Admission of Gang Evidence Against Richardson

> Richardson argues: "Since juries are extremely prejudiced by gang membership evidence, it is reasonably possible that the jury's erroneous finding that appellant devoted all or a substantial amount of his time and efforts to the gang, and the substantial prejudicial effect such a finding would have on the jury, contributed to the other guilty verdicts in this closely contested case."
>
> Richardson's argument is premised on the faulty assumption that the jury erroneously convicted him of the active gang participation felony. Since, as previously discussed, his active gang participation felony was supported by substantial evidence, Richardson's argument has no basis.

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This court must determine whether the decision by the California Court of Appeal unreasonably applied *Jackson*.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime

as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir.2005). The California Court of Appeal clearly held that the evidence was sufficient to sustain Petitioner's conviction of the crimes *under California law*, as interpreted and applied by it. Whether the California Court of Appeal correctly applied California law is beyond the purview of this Court in a federal habeas proceeding.

Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime with which a petitioner is charged, as determined by state law. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous. 28 U.S.C. § 2254(e)(1). A burden Petitioner has failed to carry.

This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Petitioner is not entitled to relief on his second ground.

C. *Double Jeopardy*.

Petitioner claims before this Court as he did before the California Court of Appeal that the retrial following the earlier mistrial violated the Double Jeopardy clause of the United States Constitution. In rejecting Petitioner's arguments, the California Court of Appeal held:

> **Motion to Dismiss based on Double Jeopardy and Due Process**
>
> Appellants' first trial resulted in a mistrial. Prior to that trial coappellants made a motion to preclude the prosecution from utilizing 15 predicate acts to

prove the gang allegations because the People had not provided timely discovery. The trial court granted the motion stating that the People could not present testimony of the predicate acts set forth in the late discovery. However, the People could offer certified copies of any predicate acts that were mentioned during the preliminary examinations of the defendants. In addition all appellants moved to exclude evidence of any prior uncharged home invasion robberies. The motion was granted. Trial commenced. As in the second trial, the witnesses at the first trial retreated from their previous positive identifications of the appellants.

Detective Brocchini testified at the first trial. He was questioned about the day he served Shameka with a subpoena for trial. While he was there he saw the business card of Jack Vines, a private investigator for appellants. The district attorney asked Brocchini what Vine's job was. He replied, "His job is to interview my witnesses and twist things they say." An objection was made. The court stated, "It is an improper comment. Be stricken." The questioning of Brocchini continued. Detective Brocchini was questioned about his interview with Green just after his arrest. The district attorney asked, "How did you start the interview?" Brocchini replied "I told him what I wanted to talk to him about. I wanted to talk to him about this robbery and another robbery that he may or may not have been involved." An objection was made and the court discussed the matter outside the presence of the jury.

Green made a motion for mistrial claiming that the testimony regarding another robbery was prejudicial and was made to inflame the jury. Richardson and Harrell joined in the motion stating that Brochinni's testimony was a gratuitous remark intended to inflame the jury. The district attorney opposed the motion and stated he had no intention of eliciting the response he received and furthermore he believed that Brochinni's testimony was just a slip and not an intentional violation of the court's previous order. The People also represented the harm could be cured by telling the jury that Green was clearly not involved in the other robbery. Also, the prior court order related to another home invasion robbery, while Brochinni's testimony was not related to that robbery. The appellants reiterated their desire for a mistrial and in his further argument to the court counsel for Green also pointed to the earlier statement by Brochinni regarding Jack Vine twisting the testimony of witnesses. Based upon Brochinni's two nonresponsive, prejudicial comments, the court granted the mistrial.

Appellants thereafter made a motion to dismiss on the ground that a retrial would violate the prohibition against double jeopardy and on the further ground of outrageous government conduct in violation of due process of law. The appellants claimed that Brochinni's testimony was a "calculated, intentional and purposeful tactic to goad the defense into moving the Court for a mistrial." They asserted that this was done because the prosecution felt the case was slipping away and a retrial would afford them the opportunity to fix whatever problems arose in the first trial with the victims and to seek a more favorable judicial

forum.  They also alleged that the police, via Brochinni, engaged in outrageous governmental conduct depriving them of due process.

The motion to dismiss was heard by the same judge who granted the mistrial.  The court denied the motion stating "the court here does not find that Detective Brocchini acted as he did for the purpose of subjecting the defendants to the burden of multiple prosecutions or to make a fair trial for them to be impossible.  [¶] The Court could speculate that he did so either because of his zeal to have the defendants convicted whom he truly believed to be guilty or because of his frustration with the prosecution witnesses who had for whatever reason obviously changed their stories, . . . had either blatantly lied to him initially or to the jury."

Harrell now claims on appeal that the trial court erred when it denied the motion to dismiss.  First, Harrell argues that Brocchini's behavior was designed to provoke a mistrial so that weaknesses in the case, the witness recantations and the court's exclusion of numerous predicate offenses, could be alleviated in a subsequent proceeding.[13]  In support of his argument that Brocchini's behavior was calculated to cause a mistrial, Harrell asserts that Brocchini was admonished by the trial court "repeatedly" that he was broaching impermissible areas of testimony and also claims that the comment about investigator Vine and the comment about the robbery occurred within a short period of time (claiming the comments occurred within one page of transcripted testimony).  Without further argument, Richardson and Green have joined in this issue on appeal.

A defendant is normally precluded from invoking the bar of double jeopardy when he has successfully moved for a mistrial.  A defendant may invoke the bar of double jeopardy in "those cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial."  (*Oregon.v. Kennedy* (1982) 456 U.S. 667, 679.)[14]

---

[13]  Respondent concedes that Brochinni was acting as an agent of the People and thus his intentions can be imputed to the prosecution. We accept this concession for the sake of argument only.

[14]  The court in *People v. Valenzuela-Gonzales* (1987) 195 Cal.App.3d 728 found that the California Constitution does not afford a defendant a standard different from the federal standard in these types of cases. Appellants here have not urged that a different standard applies under California law.

---

In *Oregon v. Kennedy, supra,* 456 U.S. 667, defendant Kennedy's motion for mistrial was granted. When he moved for dismissal of the charges based on double jeopardy, the court denied the motion, finding that the prosecutor did not intend to cause a mistrial.  (*Id*. at p. 669.)  The Court of Appeals accepted the trial court's finding but sustained the double jeopardy claim because the prosecutor's

conduct constituted "'overreaching.'"  (*Id*. at p. 670.)  The United States Supreme Court reversed the Court of Appeals and established the aforementioned rule.  In conclusion it stated: "Since the Oregon trial court found, and the Oregon Court of Appeals accepted, that the prosecutorial conduct culminating in the termination of the first trial in this case was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution."  (*Id*. at p. 679.)

Two assertions by Harrell lack support in the record.  Harrell cites to the two instances of misconduct on the part of Brochinni (references to the Vine incident and the prior robbery incident), yet refers to the trial court's admonishing Brochinni that he was "repeatedly" broaching impermissible areas of testimony.  The two instances cited by Harrell do not rise to the level of "repeatedly."[15]  Also Harrell asserts that the two instances of misconduct occurred with less than a page of testimony between them.  The first instance occurs at page 443 of the supplemental reporter's transcript, the second instance occurs at page 497 of that same transcript.  Not only are the two instances separated by multiple pages of transcript, the first instance occurred on Friday June 19, 1998, and the second instance occurred on Monday, June 22, 1998.  Thus the two instances were separated significantly in time.  Harrell's argument, that the two instances occurred in close succession, thus giving rise to an inference that Brochinni's behavior was calculated, is simply not supported by the record.

---

[15]  Repeated is defined in the dictionary as "[s]aid, done, or occurring again and again."  (American Heritage Dict. (2d vollege ed. 1976) p. 1048.)

---

Although Brichinni's conduct was improper, the trial court was in the best position to judge the intentions of Brochinni.  It determined that his actions were the result of zeal or frustration, rather than an effort to trigger a mistrial.  The record supports this finding.  As stated in *Oregon v. Kennedy, supra*, 456 U.S. at page 679 "that is the end of the matter for purposes of the Double Jeopardy Clause . . . ."

Next Harrell argues that if double jeopardy did not bar appellants' retrial, then due process of law required the dismissal of the charges because of the great advantage obtained by the prosecution upon retrial of the case.  These advantages, as argued by Harrell, include that the government was able to more thoroughly prepare for the impeachment of witnesses who had changed their stories and was able to obtain the admission of appellants' predicate priors, ruled inadmissible at the first trial.  Harrell characterizes the actions of Brochinni as "unconscionable misconduct."

"When conduct on the part of the authorities is so outrageous as to interfere with an accused's right to due process of law, proceedings against the

accussed are thereby rendered improper.  [Citations.]  Dismissal is, on occasion, used by the courts to discourage flagrant and shocking misconduct by overzealous governmental officials in subsequent cases  [Citations.]" (*Boulas v. Superior Court* (1986) 188 Cal.App.3d 422, 429.)

Harrell's assertions of advantage gained by the government are speculative and are not made upon an adequate factual basis.  Harrell has not demonstrated that the People were better equipped to impeach the prosecution witnesses at the second trial than they were at the first.  Although the prosecution presented more predicate acts in the second trial than they were at the first, Harrell has not outlined what acts were admitted during the first trial as compared to the second trial in order for this court to assess whether the difference was prejudicial.  More importantly the record does not demonstrate that the improper responses by Brochinni were outrageous, flagrant and shocking.  The trial court properly denied the motion to dismiss.

The California trial court having found that the actions of the prosecution witness were not an effort to trigger a mistrial and the California Court of Appeal having accepted that determination, Richardson's arguments are foreclosed by *Oregon v. Kennedy, supra*.  The California Court of Appeal unquestionably applied established Federal law, as determined by the Supreme Court of the United States.  This Court cannot say that the decision of the California Court of Appeal  was contrary to, or involved an unreasonable application of *Oregon v. Kennedy*, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as required by *Williams–Lockyer*.

Petitioner is not entitled to relief on his third ground.

Accordingly, because Petitioner is not entitled to relief under any claim asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All federal constitutional issues properly raised in the petition were addressed by the California Court of

Appeal in its decision and no reasonable jurist could find that decisions was "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated: August 16, 2007.

s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
United States District Judge